**WO**                                                                                                          SVK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronnie Lovelle Joseph,               ) | No. CV 06-1944-PHX-SMM (MHB) |
| Plaintiff,              ) | **ORDER** |
| vs.                                           ) | |
| Joseph M. Arpaio, et al.,            ) | |
| Defendants.            ) | |

Plaintiff Ronnie Lovelle Joseph, confined in the Maricopa County Fourth Avenue Jail, filed this *pro se* civil rights action against Joseph Arpaio, Sheriff, and K.S. Reddy, Dietician. Defendants moved for summary judgment.[1] (Doc. #27.) Plaintiff has not responded, and the time to do so has now expired. (Id.)

The Court will grant Defendants' motion for summary judgment and dismiss the action.

**I.     Procedural History and Summary of Motions**

In Count I of his Complaint, Plaintiff alleged that his constitutional rights were violated because Arpaio intentionally discriminated against Plaintiff by providing prepaid international telephone cards to out-of-country detainees but denying them to in-state detainees. (Doc. #1 at 4-5.) In Count III, Plaintiff alleged that Arpaio and Reddy violated

---

[1] The Court issued a Notice pursuant to Rand v. Roland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #29.)

his rights under the First Amendment and Religious Land Use and Institutionalized Persons Act (RLUIPA) by deliberately serving him pork products in his meals. (Id. at 6.) In Count IV, Plaintiff alleged a violation of his Fourteenth Amendment rights by placing him on an administrative special-loaf meals program without first providing him due process or a hearing. (Id. at 14.) The Court dismissed Count II and the John Doe defendants and ordered Arpaio and Reddy to answer Counts I, III, and IV. (Doc. #7.)

Defendants move for summary judgment on the grounds that (1) Plaintiff's claims do not rise to the level of a constitutional violation and (2) he may not recover in a civil action without a physical injury.

**II.    Motion for Summary Judgment**

    **A.    Legal Standards**

        **1.    Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set forth specific facts

showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of [the party's] pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

**2.      Constitutional Claims**

**a.      Discrimination**

The Constitution does not require that the law treat every individual exactly alike in order to withstand constitutional attack. Mlikotin v. City of Los Angeles, 643 F.2d 652, 653 (9th Cir. 1981) (citing Salyer Land Co. v. Tulare Lake Basin Water Storage Dist., 410 U.S. 719, 725 (1973)). A governmental entity may draw lines or make decisions that treat individuals or entities differently. Id. (citing Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 359 (1973). Equal protection requires that "all persons similarly situated shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982); Gilbrook v. City of Westminister,

177 F. 3d 839, 871 (9th Cir. 1999) (in order to state an equal protection claim, a plaintiff must allege "unequal treatment of people similarly situated").

### b. Religious Claims

The First Amendment provides in relevant part that the government shall not prohibit the free exercise of religion. U.S. Const. amend. I. Nevertheless, free exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). To prevail on a free exercise claim, an inmate must show that a defendant substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without justification reasonably related to legitimate penological interests. Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997); cf. Coronel v. Paul, 316 F. Supp. 2d 868, 878 (D. Ariz. 2004) (it is whether a practice is important to the prisoner and motivated by sincere religious belief rather than whether the practice is "mandated" by his faith that is determinative, citing Thomas v. Review Bd. of the Indiana Employment Sec. Div., 450 U.S. 707, 714, 716 (1981)). To substantially burden the practice of an individual's religion, the interference must be more than an inconvenience, Freeman, 125 F.3d at 737, or an isolated incident or short-term occurrence, see Canell v. Lightner, 143 F.3d 1214, 1215 (9th Cir. 1998) (interference that is relatively short-term and sporadic was not substantial).

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). This "compelling government interest" and "least restrictive means" test replaced Turner's "legitimate penological interest" test. Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)).

The inmate bears the burden of establishing that RLUIPA has been violated and that his religious exercise has been substantially burdened. Id. (citing 42 U.S.C. § 2000cc-2(b)). The government then bears the burden of proving that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. Id. at 995 (citing 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

### c. Due Process and Conditions of Confinement

Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, which prohibits punishment of pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 536-37(1979). The specific inquiry with respect to pretrial detainees is whether the prison conditions amount to "punishment" without due process in violation of the Fourteenth Amendment. Id. at 537 n.16. "If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id at 539. For a particular governmental action to constitute punishment, the action must cause the detainee to suffer some harm or disability, and the purpose of the action must be to punish the detainee. Demery v. Arpaio, 378 F.3d 1020,1029 (9th Cir. 2004) (citing Bell, 441 U.S. at 538). The harm or disability caused by the government's action "must either significantly exceed, or be independent of, the inherent discomforts of confinement." Demery, 378 F.3d at 1030 (citing Bell, 441 U.S. at 537).

Although pretrial detainees cannot violate jail rules with impunity, because a pretrial detainee cannot be punished, he cannot be subjected to jail disciplinary action without a due process hearing. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996); see Wolff v. McDonnell, 418 U.S. 539 (1974) (establishing the elements of due process in a prison disciplinary hearing).

Finally, only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave for a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). These are "deprivations of essential food, medical care, or sanitation" or other

conditions intolerable for prison confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1970).

### B.  Plaintiff's Claims

In support of their motion, Defendants submit the declarations of Linda Christophel (Doc. #28, Ex. A, Christophel Decl.); Gregory Millard (Doc. #30, Ex. 1, Millard Decl.); Kundavarum Reddy (Doc. #28, Ex. I, Reddy Decl.); and Nick Larkin, (id., Ex. J, Larkin Decl.). Defendants also submit various Disciplinary Action Reports; notices of Special Meal Program; and other documents (id., Ex. D-H); and Maricopa County Sheriff's Office (MCSO) Policy and Procedure, Segregation Unit (id., Ex. K).

Plaintiff did not respond to the summary judgment motion. Because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will consider the allegations set forth in Plaintiff's Complaint. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

#### 1.  Discrimination

Christophel, the MCSO inmate Telephone Systems Manager, attests that all inmates are permitted to make local collect telephone calls (within Maricopa County) and long distance collect calls (within the United States). (Christophel Decl. ¶¶ 1, 3.) She asserts that international calling cards are available to all inmates, not on restriction, for the price of $20.00. (Id. ¶ 6-7.) In his Complaint, Plaintiff alleged that he was being treated differently because international prepaid cards were being provided to others but not to him. (Doc. #1 at 4.)

Plaintiff's general and conclusory allegations are insufficient to rebut Defendants' specific assertions that international calling cards are available to all inmates, not on restriction. Plaintiff offers no evidence that he is being treated differently from other inmates who are similarly situated. Rule 56(e) requires that Plaintiff "set forth specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere allegations or denials of

[the party's] pleading." See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586-87. Plaintiff has failed to do so. The Court will grant summary judgment on this claim.

### 2. Religious Claims

Millard attests that he is the MCSO Chaplain. (Millard Decl. ¶ 1.) He asserts that if an inmate requests a religious diet, a Modified-Diet Order form is completed and forwarded to the kitchen and housing unit and the inmate begins receiving the religious diet. (Id. ¶ 3.) He admits that practicing Muslims do not eat pork products. (Id. ¶ 4.) He also admits that some Muslim inmates have complained about the no-pork diet served because some items, such as turkey bologna, appear to be pork; those inmates can choose a vegetarian diet instead. (Id. ¶ 5.) Millard attests that he reviewed Plaintiff's Modified-Diet Order forms kept in an electronic data base in the Chaplain's office and they show that on 4/14/2004, a no-pork diet was issued and it was renewed on 5/20/05. (Id. ¶ 7, Attach. Part a.) He further asserts that on 8/27/07, Staff Chaplain Pepel at the Fourth Avenue Jail confirmed that Plaintiff was receiving a no-pork diet. (Id. ¶ 7.) Millard also attests that Imam Essam Mahmoud visited Plaintiff on July 11, 2007 and assured Plaintiff that he was not receiving pork in his meals. (Id. ¶ 8.) In his Complaint, Plaintiff alleged that Defendants have "deliberately serv[ed] him pork products continuously in his religious meals." (Doc. #1 at 10.)

Defendants have demonstrated that Plaintiff is receiving a no-pork diet.[2] Plaintiff's conclusory allegations in his Complaint that he is being given pork products are insufficient to defeat summary judgment. He does not specify what products he was given or when he received them or how he knew that the products were pork. Plaintiff fails to demonstrate that there is a genuine issue whether Defendants have substantially burdened the practice of his religion. See Celotex, 477 U.S. at 322-23. The Court will grant summary Judgment on Count III as to the First Amendment and RLUIPA claims.

---

[2] Although some of Defendants' evidence is hearsay, e.g. references to what Pepel and Mahmoud said, Plaintiff does not object to the evidence, and the documents showing that Plaintiff was on a no-pork diet are sufficient to meet Defendants' initial burden.

- 7 -

### 3. Due Process and Conditions of Confinement Claim

Larkin, MCSO Detention Officer Captain for Custody Region I, attests that he is the Jail Commander at the Fourth Avenue Jail and is familiar with the policies regarding the use of the special meal "nutriloaf" or loaf program. (Lark Decl. ¶¶ 1-3.) According to Larkin, an inmate can be placed on the loaf program under the following circumstances: (1) making a threat to assault a staff member; (2) assaulting a staff member; (3) possession of contraband that can be used as a weapon; (4) assaulting another inmate with bodily fluids; or (5) attempting escape. (Id. ¶ 4.) He attests that the loaf program eliminates the need for plastic sporks, trays, and cups, which can be used as weapons, and therefore, the program helps to ensure officer safety. (Id. ¶ 5.) It also enhances safety because it does not require removal of food-serving items and, therefore, reduces the number of times an officer must open the cell slot to remove something and the time officers are exposed to potentially dangerous inmates. (Id. ¶ 6.)

According to Larkin, the loaf program is implemented immediately following an incident warranting the program, and the detention officer and supervisor must both agree that it is warranted. (Id. ¶ 7.) No hearing or grievance is initiated either before or after placing an inmate on the loaf program because it is administrative, not disciplinary, in nature. (Id. ¶¶ 7-8.) The Policy and Procedure regarding the Segregation Unit Operation shows that while most inmates in segregation receive the same meals as inmates in general population, for protection of staff and inmates, inmates who engage in certain behaviors may be fed an alternative meal not requiring paper, plastic or other materials. (Doc. #28, Ex. I.) Defendants offer Disciplinary Action Reports from various dates showing that Plaintiff engaged in assaultive and threatening behavior and threw bodily fluids or waste and was placed on the loaf program. (Id. Ex. D-H.)

Reddy is the MCSO Registered Dietician and holds a B.S. in Food and Nutrition and a Master's in Dairy Sciences. (Reddy Decl. ¶¶ 1, 3.) Reddy asserts that the dietician is the liaison between the food services, medical, and detentions divisions. (Id. ¶ 4.) Reddy

prepares monthly menus and annual menu analyses to track calories and nutritional content of MCSO meals based on the actual food products used and inspects the jail food services to ensure correct portions and hygiene. (Id. ¶¶ 5-6.) The activity level of county inmates is generally between sedentary and lightly active, which requires 2400 to 2500 calories daily according to the U.S. Recommended Dietary Reference Intake guidelines. (Id. ¶ 8.) Reddy attests that the nutriloaf diet is two loaves daily served along with water, which is available to the inmate in his cell. (Id. ¶ 9.) The loaf is made of nonfat/skim dry milk, potatoes, carrots, fruits, cabbage, dehydrated beans, vegetable oil, onions, eggs, legumes, chili powder, and bread dough. (Id.) Two loaves provide from 3200 to 3600 calories. (Id. ¶ 10.) Reddy opines that an inmate receives adequate macro-nutrients from the nutriloaf diet. (Id. ¶ 11.)

In his Complaint, Plaintiff asserts that he was placed on the loaf program without a hearing and the loaf is not a balanced meal, its "freshness is questionable as well as calories inadequateness," and he has suffered "nutritional harm" from the deprivation of regular meals. (Doc. #1 at 14, 15.)

Although Defendants' evidence shows that the loaf program is used for some inmates in disciplinary segregation, they demonstrate that use of the loaf program is for safety purposes, not punishment. Thus, they have demonstrated that the loaf program is reasonably related to a legitimate governmental objective. Plaintiff fails to rebut this evidence. The Court notes that Plaintiff does not claim that he did not receive due process for his disciplinary charges; rather his claim concerns only the loaf program. But because there is no evidence that the loaf program is instituted for punishment, Plaintiff offers no evidence demonstrating a procedural due process violation. In addition, he does not rebut Defendants' proof that the loaf diet provides adequate nutrition and calories. He offers only speculation that the calories are insufficient and that he has been "nutritionally harmed." Plaintiff has not demonstrated the existence of a genuine factual dispute requiring a trial. See Celotex, 477 U.S. at 322-23. The Court will grant summary judgment on this claim.

Because the Court will grant summary judgment on the grounds discussed, it need not

consider Defendants' additional argument. In addition, because no claims remain, the Court will dismiss the action.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. #27) is **GRANTED**, this action is dismissed, and the Clerk of Court must enter judgment accordingly.

DATED this 25th day of January, 2008.

/s/ Stephen M. McNamee
Stephen M. McNamee
United States District Judge